Green, J.
delivered the opinion of the court.
The first question to be considered in relation to the compromise set out in the bill, is, had John F. Stump the legal power to make it? This will depend upon the validity of his appointment as administrator de bonis non, or, upon the extent of his powers under the letter of at *180 torney. Although the county court of Davidson may have had the power, (as was decided in the case ot M’Gowan vs. Wade, 3 Yerg. 375) with the consent of John Brooks, to cause him to surrender up his administration, yet it does not follow that they could appoint another when all the administrators did not surrender the trust. The administration of the estate of Matthew Brooks, deceased, had been granted to Arthur Brooks, Robert Brooks and John Brooks. Arthur Brooks had died, leaving Robert and John surviving administrators, with all the power that had been vested in the three. No new administrator could have been appointed on the death of Arthur. The administration is an entire thing, and when granted to several, and one dies, the entire authority remains with the survivors. So when John, by his consent, was removed from the administration, the entire trust remained in Robert Brooks, whose rights, as administrator, could no more have been affected by John’s resignation than by his death. It follows, that the appointment of John Brooks and John F. Stump, as administrators de bonis non, was void, and conferred upon Stump no authority to compromise the rights of the estate.
The power of attorney exhibited in Stump’s deposition purports to have been executed by the heirs and dis-tributees of Matthew Brooks, deceased, and on the back of it a power executed by John Brooks and Robt. Brooks, the administrators, to Stump, authorizing him to manage the estate and “settle controversies by compromise or otherwise.” This last power of attorney, the answer says, was revoked before this compromise was made; and John F. Stump, in his deposition, says, “the last mentioned power was erased by Judge Trimble, because it was believed the preceding power was amply sufficient.” The distributees had no power, as such, to compromise a suit which was prosecuted by the administrator, without his consent. Consequently, they could confer no such power on John F. Stump. Furthermore, the pow *181 er of attorney was executed by only a part of the dis-tributees, and could be obligatory on none of the others, But it never was intended by this power of attorney to authorise Stump to perform any act which belonged to the duties of the administrators. In proof of this, the administrators themselves executed to him a power the same day, and on the same paper upon which the one executed by the heirs was written. But this latter was revoked and cancelled before he made the compromise.
But it is insisted that although Stump may not have had the legal authority to make this compromise, yet, that he was clothed with the appearance of authority by the act of these administrators and distributees; who, by procuring him to be appointed administrator, and joining him in a bond as his securities, virtually gave up their own power, and in equity ought to be bound by his acts.
There would be much force in this argument had the compromise been made with the assent or connivance of the lawful administrators. But this was not the case. Mr. Crutcher was informed, before he made the compromise, that it would not be approved of by the administrators. It was his duty, then, if he was determined to proceed, to see that he dealt with a man who was clothed with adequate power to make the act he was about doing, binding upon all parties. Placing the case in the most favorable light for the' complainants, Stump could stand in no higher character than that of agent of the administrators. But in the exercise of this agency, the parties for whom he is acting perceive that he is about to make a contract injurious to their interests, and they notify the party with whom he is dealing, that they will not be bound by the act; surely, if he will go on after this warning, he; has no equity to enforce a specific performance against the principal.
Upon the grounds' presented in the aspect of the bill which has been considered', we are of opinion the complainants are not entitled to relief.
*182 We come next to consider the case in relation to the .. . , , allegation that the contract was rescinded in a day or two after it was entered into. And here the counsel for the defendants insist that the case is not sufficiently stated in this aspect, to authorize a decree. It is true the circumstances and facts attending the rescisión of the contract are not so fully and minutely stated as is usual and desirable, but we think the facts are'so stated as to make them plainly and distinctly a ground for relief. The bill sets out the contract, and states expressly, that in a few days after it was entered into, it was rescinded by the parties. If it was rescinded, then clearly the defendants ought not to have the benefit of their judgment at law. How is the proof upon this subject? Mr. Crutcher says that when the contract was entered into, it was put into his hands by the parties for safe keeping; that the next day, or a day or two after, Gen. Robertson wished to purchase Mr. Lewis judgment; that Mr. Lewis said he could not let him have it until he could see Brooks and cancel the contract with him; that Robertson and Lewis both left the store in search of Brooks; and that shortly afterwards Mr. Lewis and Brooks came into the store, and Lewis told him in presence of Brooks, that himself and Brooks had cancelled their contract, and that the article was of no further service; that upon this information he took the paper from his desk and threw it on the counter, and that Brooks, as he left the store in company with Lewis, took it up as witness supposed to destroy it. Mr. Crutcher also says that Lewis told him he had let Robertson have the judgment, who would call and pay him next day; and that Robertson did pay him $1,640 for Lewis on account of his judgment against Armstrong. This testimony is explicit and conclusive as to the fact of the rescisión of the contract. But if it needed corroboration, the circumstances of the case tend strongly to convince the mind of the truth of the witness’ statement. It will be borne in mind that this covenant contained a provision *183 obligatory on each, for the benefit of the other. Now it was. certainly not proper that either of the parties should have the possession of the paper, unless there had been a duplicate placed in the hands of the other. For if Brooks were to hold the paper he might produce it, if for his benefit, or suppress it if his interest required it. And so either party, by the possession of the covenant, would have had an undue advantage over the other. It was most natural that they should have placed it in the hands of some common friend. Nor is it likely it would have been given up to Brooks or Lewis-, except upon their joint application. There is therefore no sensible reason why the covenant should have gone into the hands of Brooks, except under such circumstances as are stated by Mr. Crutcher. The length of time, too, that the parties lived near each other afterwards, when Brooks most probably knew Lewis had sold his judgment to Robertson, during all which time nothing is heard of the covenant, until 1814, after the death of both parties, is a strong circumstance to show that Brooks regarded the contract as at an end. Upon the whole we think there cannot be a doubt but that the contract was rescinded by the parties soon after it was entered into. The slight discrepancy between Mr. Crutcher’s swearing in the bill and the statements in his deposition, are too inconsiderable to cast a shade of suspicion upon his testimony.
But it is insisted that it was not competent to prove these facts by Mr. Crutcher, he being a complainant in the cause. The defendants chose to make Mr. Crutch-er a witness, as by the rules of chancery practice they had a right to do. They applied for an order to take his deposition. The caption of the deposition states that it was taken by consent of both parties. We know of no rule by which a witness 'who is competent to testify for one party, is rendered incompetent to prove any facts in favor of the other party. As the defendants chose to make this party a witness, his testimony must be received *184 for all purposes. If the defendants had chosen to confine the disclosures of Crutcher to any particular facts, they might have filed a cross bill for a discovery, and then that only would have been evidence which in the answer would have been responsive to the bill.
It is next objected to the relief sought by this bill, that the complainants could have made the^defence at law which forms the ground of their application to the court of chancery, and not having done so, this court cannot now take jurisdiction of the cause. This has been the only question upon which there has been any difficulty. In the case of Kearney vs. Smith, (3 Yerger, 127) this court held “that a party will not be aided by a court of chancery after a trial at law, unless he can impeach the justice of the verdict on grounds of which he could not have availed himself at law, or was prevented from doing it by fraud or accident, or the act of the opposite party unmixed with negligence or fault on his part.” The court has adhered to the principle here laid down ever since, and has constantly refused to listen to a party who comes into equity after the matter has been tried at law, or where the negligence of the party alone prevented it. But we think this case does not come within the operation of the principles of the case of Kearney vs. Moore, It is true the matter of this bill would have been a good defence if pleaded to the action at law; but it is stated in the bill, and the fact is clearly so, that the complainants had no legal proof of the matter constituting their defence; and it would have been wholly unnecessary for them to plead it. It is said they ought to have filed a bill of discovery pending the action at law. Why do so? They could not have supposed it probable that Brooks’ administrator knew of the rescisión of the contract. Their answer to this bill shows that a bill of discovery would have been wholly useless.
We next come to consider the questions presented arising from a lapse of time, and the statute of limita *185 tions. Jio statute of limitations .has any application to this case. The complainants do not seek to recover any thing, Rut are on the contrary resisting the demand of the defendants.
-Time operates as evidence, and in many cases a bill will not he entertained after a great lapse of time, because such length of time is proof that the party had relinquished the right for which he was contending, or that it had been extinguished. But in a case like this no such presumption can exist. In 1802, Lewis supposed this contract was cancelled. It is not to be presumed that he knew Bimoks had possession of it, nor is it likely that Brooks had any design injurious to Lewis by such possession. There was up to 1814 no knowledge on the part of Lewis or his executors that any cause'of action existed. Time therefore, furnishes no evidence against them. Since the suit was brought they have been constantly resisting it, and thus constantly repelling all presumption that time otherwise might have raised.
Upon the whole we think the decree ought to be affirmed.
Decree affirmed.